The State v. Mumford.

73 647
39a 110

73 647
60a 50

### THE STATE v. MUMFORD, *Appellant.*

**Lottery**: DISTRIBUTION OF PRIZES TO SUBSCRIBERS TO A NEWSPAPER. The proprietors of a newspaper, in pursuance of a pre-arranged and advertised scheme, issued to each subscriber for their paper, in addition to the paper itself, and without extra charge, a ticket which entitled the holder to participate in a distribution of prizes offered by the proprietors to all persons who should become subscribers. The distribution was made by lot. *Held,* that the scheme was a lottery within the purview of the criminal laws; and it made no difference that the tickets were not sold, but were given to subscribers and to no one else.

*Appeal from Jackson Criminal Court.*—The case was tried before WILLIAM WARNER, ESQ., sitting as Special Judge.

AFFIRMED.

*C. J. Bower* for appellant.

Defendant offered no prizes for money; he simply said to each subscriber to the newspaper that he could have a gift—a voluntary offering. The price of the subscription remained unchanged. The subscribers received full value for their money, irrespective of the gift. This is no lottery. *Governors v. Am. Art Union,* 3 Seld. 228; *s. c.,* 13 Barb. 577; *People v. Am. Art Union,* 3 Seld. 240; *State v. Sykes,* 28 Conn. 225; 8 Phila. 457; *Morris v. Blackman,* 2 Hurlst. & Colt. 912; *O'Connor v. Bradshaw,* 5 Exch. 882; *s. c.,* 20 L. J. Ex. 26; *Hull v. Ruggles,* 56 N. Y. 424; *s. c.,* 65 Barb. 432; *Negley v. Devlin* 12 Abb. Prac. (N. S.) 210; *Fleming v. Bills,* 3 Oregon 286.

*D. H. McIntyre*, Attorney General, for the State.

The fact the defendant did not sell the tickets, but gave them to subscribers only, and that the subscription price of the paper remained the same, does not make the scheme any the less a lottery. Even if the newspaper was worth the subscription, the fact that the premiums drawn by the holders of tickets were not of equal value, and that some tickets drew nothing, would make the distribution a scheme of chance, and, therefore, a lottery. It may safely be asserted that many persons, under such circumstances, would subscribe for the newspaper, prompted by the hope of gain. *Thomas v. People*, 59 Ill. 160; *Dunn v. People*, 40 Ill. 466; *Com. v. Chubb*, 5 Rand. 715; *Randle v. State*, 42 Tex. 580; 33 N. H. 335; *U. S. v. Olney*, 1 Deady 461.

NORTON, J.—This cause is here on appeal from the judgment of the criminal court of Jackson county imposing a fine of $25 on defendant. The indictment charges the defendant with unlawfully advertising and causing to be advertised in a certain newspaper published in the City of Kansas, in the county and State aforesaid, known as The Kansas City Times, the drawing of a scheme in a lottery, in and by which a certain piano and divers other pieces of property were to be disposed of by lot or chance, on the 16th day of June, 1877; and the indictment is founded upon section 28, page 503, Wagner's Statutes, which reads as follows: "Any person who shall sell or expose to sale, or shall keep on hand for the purpose of sale, or shall advertise or cause to be advertised for sale, or shall aid or assist, or be in anywise concerned in the sale or exposure to sale of any lottery ticket or tickets, or any share or part of any lottery ticket in any lottery or device in the nature of a lottery, within this State or elsewhere, and any person who shall advertise or cause to be advertised the drawing of any scheme in any lottery, and shall

be convicted thereof in any court of competent jurisdiction, shall, for each and every such offense, forfeit and pay a sum not exceeding $1,000."

The cause was submitted on an agreed statement of facts, which are substantially as follows: Defendant, as business manager of the Kansas City Times Company, in 1877, caused certain advertisements to be published in the Kansas City Times, a newspaper owned and controlled by said company. The general purport of said advertisements was to the effect that four distributions of premiums would be made to the subscribers of said newspaper during the year 1877, amounting to $20,000 personal property, consisting of pianos, books, guns, sewing machines, and many other useful articles, with the value placed opposite each, and that to each subscriber a ticket or tickets would be given, (in accordance with the time of his subscription,) which was good for all the distributions, provided he had not previously had a prize awarded. The allotments of prizes were superintended by a committee selected by the subscribers themselves at each stated distribution, and the committee allotted the gifts to the different subscribers by drawing tags from a large wheel, and then drawing a tag from a small wheel to correspond with one drawn from the large wheel, one representing the number of ticket, the other the number of prize. The whole proceeding of distribution was done without any authority, assistance, suggestion or advice of defendant, except that the Times Company furnished the paraphernalia for distribution, that is, the wheels, etc. All the subscribers who were ticket holders in these distributions paid no more for the subscription than the regular rates. The tickets were no enhancement of the subscription rates. Each ticket holder was entitled, when the ticket was properly registered upon the books of the Times Company, to a copy of the Times for the period paid for, and entitled to the four distributions, as stated before. In no instance did the defendant sell any ticket or tickets, nor did he demand a higher price for the news-

paper with said tickets than without them ; and at the re-·quest of the board of directors of the Kansas City Times Company a distribution of premiums was had on the 2nd day of April, 1877, in the county of Jackson, and State of Missouri, on which date the ticket holders assembled in Kansas City, and through their committee, as before stated, made the allotments of gifts to the various subscribers, which premiums so allotted were delivered by defendant, as business manager of the Kansas City Times Company, and at the instance of the board of directors thereof.

Upon this statement the court held the defendant guilty, and the only question is, whether the facts agreed upon warranted the judgment rendered. It is insisted by defendant that they did not, mainly upon the ground that the scheme for drawing and distributing prizes was not a lottery, that the Kansas City Times was·intrinsically worth the subscription price, and that such price was not increased by reason of the scheme. The term lottery has no technical meaning in the law, distinct from its popular signifi-·cation, and it is defined by various lexicographers, as follows: "A distribution of prizes and blanks by chance—a game of hazard in which small sums are ventured for the ·chance of obtaining a larger value either in money or other articles." Worcester Dict. "A scheme for the distribution ·of prizes by chance." Bouvier's Dict. "A distribution of prizes by lot or chance." Webster's Dict. "A kind of game of hazard, wherein several lots of merchandise are ·deposited in prizes for the benefit of the fortunate." Rees' ·Cyclopedia. "A sort of gaming contract by which, for a ·valuable consideration, one may, by favor of the lot, obtain a prize of a value superior to the amount or value of that which he risks." American Cyclopedia. It, therefore, appears from all these authorities, that when there is a distribution of prizes of some value, by chance or lot, this ·constitutes a lottery. Testing the scheme, which the agreed ·statement of facts discloses in this case, by the above defi-·nition of the word lottery, and it is clearly embraced by

it. The subscription price of the Kansas City Times, when paid by the subscriber, entitled him to a copy of the paper and also to a ticket which might draw a prize (as for instance, a piano), worth a hundred fold more than the subscription price of the paper. The drawing of such a prize under the scheme was within the range of probabilities, and, doubtless, many subscriptions for the paper were made and induced solely by the consideration that the person subscribing would be entitled to a ticket which might bring to him some one of the many valuable prizes to be disposed of in the drawing. The fact that the subscription price of the Times was not increased, does not alter the character of the scheme, inasmuch as the price paid entitled the subscriber to a ticket in the lottery as well as to a copy of the paper. The facts agreed upon, we think, bring the case clearly within the statute upon which the indictment is framed, and make the defendant amenable to the penalty therein prescribed. Similar schemes have been condemned by the courts of other states, as being obnoxious to and violative of statutes similar to our statute, as will be seen by reference to the following authorities: *United States v. Olney*, 1 Abb. (U. S.) 275; *State v. Clarke*, 33 N. H. 335; 59 Ill. 160; 40 Ill. 465; 42 Texas 580; 2 Whart., § 1491. Judgment affirmed, in which all concur.