THE STATE ex rel. HOME PLANNERS DEPOSITORY v. J. G. HUGHES, Commissioner of Finance.

In Banc, July 2, 1923.

1. **LOTTERY: Elements and Definition.** The elements of a lottery are consideration, chance, prize; and the term "lottery" includes every device whereby anything of value is, for a consideration, allotted by chance.

2. ————: **Consideration: Chance for Prize.** The fact that each holder of a certificate of a home planners' depository would or might, by its declaration of trust, eventually receive an amount equal to the aggregate of his payments, does not remove its lottery feature, if in addition to such payments each secured a chance for a prize.

3. ———: **Rate of Interest: Judicial Notice.** Judicial notice will be taken that a rate of interest of one-half the legal rate, or three-eighths of the maximum contract rate, to be paid by certificate holders of a common-law trust upon loans, being a less rate than that paid by saving institutions whose purpose is to re-loan deposited funds, and being much less than what all persons know to be the usual rate on loans on real estate security, is less than the value of the money's use.

4. ———: **Unequal Chance to Obtain Loans: Prize.** Where under the plan of loaning money to holders of certificates of a home planners' depository, obtained by the payment of monthly installments, early certificate holders will obtain the use of their loans, in part, for nearly ten years while others may or will get it for a materially less time, and there will be a decided inequality in the value to the borrowers of the low-rate loans they procure, dependent upon the time the loans would have to run, this inequality constitutes a prize within the prohibition of the Constitution, if the element of chance determines the distribution of the right to the loans; and if the value of a holder's certificate depends in part upon the order in which applications for loans are made and listed, and his application does not become eligible for a loan until all previous applications have arrived and been listed, there is an element of chance which determines the distribution of the rights to loans, and the plan is a scheme in the nature of a lottery.

5. ———: ———: **Impossibility of Borrower to Know.** If the holder of a certificate in a common-law trust does not know and cannot ascertain in what order his application for a loan will be considered until all previous applications are listed, there is the element of chance that makes the plan a lottery.

6. ———: ———: **Three Per Cent Interest: Lawful Contract.** Contracts for loans at three per cent interest are lawful, but the borrower obtains money at a less rate than the value of its use, and such contracts are unlawful if they are allotted by chance; and if the subscriber to a common-law trust, upon applying for a certificate, is assigned a number or rank as to eligibility for a loan by a device which gives him no information as to the actual rank he will secure when he later makes application for a loan, the contract is unlawful, and the loan plan is a scheme in the nature of a lottery. [Distinguishing State ex rel. v. Lee, 288 Mo. 679.] *Held*, by GRAVES, J., dissenting, that the decision in this case condemning relator's scheme as a lottery cannot be distinguished from State ex rel. v. Lee, 288 Mo. l. c. 708, since the

opportunity for obtaining a loan by a certificate holder in each case was made dependent upon the order of the filing of an application therefor, and the mere difference in interest rates charged by the two trusts does not make the plan of one a lottery and that of the other not a lottery.

7. ———: **Other Licensed Companies.** The decision that relator's plan is a lottery and that it is not therefore entitled to a permit from the State to do business, is not to be considered as stigmatizing future transactions of other common-law trusts which have been licensed under an express statute and are operating in pursuance to such permits.

## Mandamus.

ALTERNATIVE WRIT QUASHED.

*Frank M. Ludwig, Fred S. Hudson* and *Glen L. Bruner* for relator.

*Jesse W. Barrett,* Attorney-General, for respondent; *T. E. Francis* and *B. T. Hurwitz* of counsel.

*James S. Summers, Busby, Sparrow & Patterson* and *Williamson, Pew, Harris & Gaylord, amici curiae.*

JAMES T. BLAIR, J.—Relator seeks to compel the Commissioner of Finance to license it under Section 10263, Revised Statutes 1919, as an unincorporated association of individuals "formed for the purpose of accumulating a fund or funds to be used for the purpose of enabling contributors to such fund, or their assigns, to secure a loan or loans for the purpose of acquiring a dwelling house . . . or discharging a mortgage or other encumbrance thereon." The surety bonds required by the section named have been tendered and no objection is made to them. The questions raised relate to the validity of Section 10263 and the legality of relator's plan of business.

Relator's declaration of trust sets out its plan and powers. It declares its purposes, generally speaking, in

accordance with the provisions of the statute, and prescribes the method of electing trustees, and defines their powers and duties and relations to each other and those who shall become subscribers. It is provided that the certificates to be issued under the trust shall be issued in numerical order and be of like tenor except as to face value, and that all settlements and requirements with respect to certificates shall be in proportion to the face value. Monthly payments of $4 for each $500 of the face of each certificate is required for a period not exceeding 120 months. The trustees are empowered to provide options for settlement in various circumstances. "Certificates shall be eligible for loans, not to exceed the face value thereof, for the purposes enumerated in this declaration of trust, from the available funds of the loan fund, in its regular order according to the day, hour and minute the application to secure the certificate was made and signed, providing however, that if such certificate matures for a loan prior to the accumulation of thirty per cent of the face value the holder is entitled to advance the difference required to make up the amount of thirty per cent." Loans are to be made on real estate security. At the time of receiving loans certificate holders "may surrender their certificates and receive credit on the principal sum of their loans for the loan credit, under the terms of the certificate, or may reject such credit and carry the certificate according to its tenor; in either event the amount due on the loan shall be paid at a minimum rate of $8 monthly on each $1,000 borrowed, including three per cent interest computed yearly in advance and payable monthly, except in cases of misfortune," when extensions are allowed. "Certificate holders who have paid all installments required in accordance with the certificate terms and who have not obtained or accepted a loan, or made other settlements provided under their certificates, shall be entitled to a cash settlement of a sum equal to all credits to a loan fund, derived from the installments paid thereon, plus its *pro rata*

share of the net earnings, if any, of the loan fund of the series to which it belongs; such sums to be ascertained by the trustees hereunder, and their determination shall be conclusive as to such amounts, provided that no such settlements shall be in excess of the face of the certificate plus an additional fifty per cent of the face of the certificate." It is provided that the payment on certificates, less deductions for expenses under other provisions, shall constitute a loan fund for payment of obligations on certificates. The first five monthly payments, one dollar per thousand of face value from each of the next seven payments and fifty cents per thousand from each subsequent payment are taken to constitute the expense fund.

It is provided that the trust shall continue until the expiration of twenty years after the death of the last survivor of the named trustees, except that the trustees may terminate the trust sooner by unanimous vote. At such termination the trustees are to distribute the property of the trust "ratably and in due and in proper share or proportion among those entitled thereto." The record contains the "Declaration of Trust of the Home Planners Fiscal Agency," which organization relator apparently intends to employ in the active management and handling of its affairs. The form of the certificate intended to be used is set out as an exhibit. It includes a table of values for settlements under several sets of conditions. A contract between relator and the fiscal agent also appears. Respondent avers he refused a permit because he found the business of relator would be in conflict with the Constitution and laws of the State in that: (a) it is a scheme in the nature of a lottery; (b) Section 10263, Revised Statutes 1919, is void for conflict with named constitutional provisions; (c) relator's plan and business bring it within Section 11 of Article 12; (d) that relator is not within the terms of Section 10263 for several reasons; (e) that the proposed plan is fraudulent in its nature.

The first question argued is whether relator's plan or scheme is a lottery or in the nature of a lottery with-

in the meaning of Section 10 of Article XIV of the Constitution which forbids the authorization of lotteries or gift enterprises for any purpose. The term "lottery," thus used, includes every device whereby anything of value is, for a consideration, allotted by chance. [State v. Becker, 248 Mo. l. c. 560; State v. Mumford, 73 Mo. 647; 17 R. C. L. p. 1222, sec. 10.] Consideration, chance, prize—these are the elements. That relator's plan includes the first cannot be denied. The questions debated relate to the second and third. The fact that each certificate holder eventually might or would receive an amount equal to the aggregate of his payments can make no difference if, in addition each secured a chance for a prize. [State v. Mumford, supra; State v. Lipkin, 84 S. E. (N. C.) l. c. 343, et seq.] Relator's plan provides for the ultimate repayment of all sums paid in, plus three per cent interest and a share in profits—the whole not to exceed fifty per cent in excess of the face of the certificate. The loans it agrees to make to its certificate holders are to bear three per cent interest. The right to such a loan is obviously a valuable right. Judicial notice will be taken that a rate of interest of one-half the legal rate, three-eighths of the maximum contract rate, less than the rate paid by savings institutions whose purpose is to reloan funds, and much less than what all know to be the usual rate in the State on loans on real estate security, is less than the value of the money's use. [People ex rel. v. State Tax Commission, 196 N. Y. 39.] Under the plan of relator, though the question what would happen in the case of late subscribers be ignored, some early certificate holders would get the use of their loans, in part, for nearly ten years while others might or would get it for a materially less time, if at all. There would be a decided inequality in the value to the borrowers of the low rate loans they procured, dependent upon the time those loans would have to run. This inequality in value constitutes a prize within the prohibition of the Constitution if the element of chance deter-

mines the distribution of the rights to loans. [Fitzsimmons v. United States, 156 Fed. 477.] The real question is whether the distribution of loans under the plan is to be made by chance. "Certificates shall be eligible for loans in regular order according to the day, hour and minute the application to secure the certificate was made and signed." It is manifest that the subscriber, while he knows the "day, hour and minute" his application for the certificate is made, cannot know the number of certificates which have been applied for preceding his application. Even if he knew the actual number which had reached the Fiscal Agency and had been listed, he could not know how many applications had been taken thereafter by relator's representatives and had not reached the office for listing. It follows he cannot know his rank or order in the matter of eligibility for a loan That depends upon the number of previous applications for certificates and cannot possibly be determined until after all certificates, preceding his application have reached relator or its agent and have been listed. The value of his certificate depends in part upon the order in which it becomes eligible for a loan, and the order in which it will become eligible cannot be known by him or any one until all applications previously taken by relator's solicitors have arrived and been listed. It has been held that plans in which applicants take chances upon preference in case numerous applications are received at the same time, and others in which the order of preference depends upon the receipt of applications through mail or their numbering as received (McDonald v. United States, 63 Fed. 426; Siver v. Investment Co., 183 Mo. l. c. 50; State ex rel. Prout v. Nebraska Home Co., 66 Neb. 349, 60 L. R. A. l. c. 452) are schemes in the nature of lotteries. The uncertainty in respect to the order in which the certificate will become eligible for a loan is the thing which introduces the element of chance into the plan of distribution. It cannot be resolved by reason or on probabilities, but depends upon conditions such that the applicant cannot know when he signs wheth-

er many or few applicants are ahead of him and whether, therefore, he is to receive a loan early or late. The system in the McDonald Case makes the element of chance more apparent, but does not more certainly disclose its presence. The uncertainty in the loan is somewhat analogous to the uncertainty in the order of payment in State ex rel. v. Investment Co., 64 Ohio St. 283; United States v. Purvis, 195 Fed. 1. c. 620, 621. In the Purvis Case the prize lay in the opportunity to secure a loan, as in this case. While the chance in that and like cases depended upon other devices, yet it was the fact that chance intervened which rendered the scheme unlawful. Reliance is placed upon Equitable Loan Co. v. Waring, 117 Ga. 599. A majority of the sitting judges, not a majority of the court, rendered this decision. The case is unlike this in that it dealt with a scheme whereby each contributor was to be repaid all payments made, with eight per cent interest. The order of calls for payment was determined by lot. Whether this plan could be approved under our law need not be decided. It is not relator's plan. There are many other decisions cited in the briefs which may be read with profit, but need not be separately discussed.

The only decision in a case in all respects like the instant case is in Fisher v. Ohio, Ohio Court of Appeals of the Eighth District. A certified copy of the opinion is on file. The right to loans is determined the same way and the rate of interest charged is the same. The court held the scheme a lottery. As in this case, it was argued that the chance for profit must depend upon a "subsequent event or there could be no lottery." The court held, in substance, as was held in State v. Clarke, 33 N. H. 1. c. 335, that the important feature was that the applicant himself did not know and could not ascertain in what order his certificate would stand when the returns were all in. This state of mind made it, "with him, as much a matter of lottery as if he had drawn the number from a hat." If the fact that the winning number is determined before the tickets or chances are sold, though

the number is not disclosed, renders the scheme unassailable as a lottery, then the "Louisiana Lottery" could still operate under our law by the simple device of determining the winning numbers first, keeping them secret and then selling chances based upon correspondence of ticket numbers with the numbers already drawn but kept secret from the ticket buyers; or, publishing the winning numbers and selling secretly numbered tickets. None will contend this can be done. It overlooks the whole reason for the law against lotteries. It is the appeal to the gambling instinct which is condemned, and no mere juggling of the order of business can serve to evade the constitutional provision. State ex rel. v. Lee, 288 Mo. 679, is unlike this case. There the borrower was required to pay interest at the rate of 7.72 per cent, nearly the maximum contract rate of interest. This high rate tends to exclude the idea of "prize" from the plan in the Lee Case. The borrower is there required to pay all that the use of the money is worth. At least it cannot be said as a matter of law that he is to pay less. Contracts for three per cent interest are lawful. No one denies that. That is not the question. It is not to be denied that a three per cent loan is a loan in which the borrower gets money for a rate less than the value of its use. While *contracts* for loans at such a rate are lawful, as a contract for a farm at less than its value is lawful, yet such contracts for such loans are unlawful if they are alloted by chance; just as it would be unlawful to raffle off a farm. The authorities cited and many others put this beyond dispute. In the instant case the subscriber, upon applying for a certificate, is assigned a number or rank as to eligibility for a loan by device which gives him no information at all as to the actual rank he will secure. [Authorities cited.] In the Lee Case, the applicant secured no number or rank by virtue of his application for a *certificate*. His right to a loan depended upon the order of his application for the *loan* itself. If he desired to do so he had every means of as-

certaining the exact order or rank of his application for a loan. The loan fund was a mutual fund and the order of loan was like that of an applicant to a loan company—dependent upon the time the application for the loan was made. The Lee Case was correctly decided if associations to accumulate loan funds can be formed at all. It is denied by respondent in this case that this can be done, though he does not deny the soundness of the Lee Case in so far as the question of lottery is concerned. It has been suggested that there is a decision later than that in the Lee Case. There is no such decision in the sense of precedent. Judgment was entered on confession in another case. The cause was not briefed for respondent or contested by him. Many other reasons for quashing the alternative writ are urged in the brief of respondent. They need not be discussed.

For the reasons given the alternative writ is quashed. All concur, except *Graves, J.,* who dissents in separate opinion.

GRAVES, J. (dissenting).—It is true that the Legislature has wiped out the right to organize a business of the kind here involved. That law was not in effect when we granted our alternative writ, and will not be in effect for a month, or nearly so. Relator's rights are therefore dependent upon existing law. They were so dependent when this alternative writ was awarded, and the case submitted, long since. Delay in filing briefs has in a large measure delayed the disposition of the case. But this is of but little importance. The present scheme is condemned in the opinion on the theory that it is a lottery. The case of State ex rel. v. Lee, 288 Mo. l. c. 708, determines that question against the contention of the respondent, and in favor of the relator. That case cannot well be distinguished from this case, upon that issue. The alleged lottery feature is no more apparent in the one case than the other. The opinion of my learned brother draws a distinction without a difference. If

we want to overrule the Lee Case, well and good, but to distinguish it, does not lie within the two records, when both schemes are read. The mere difference in interest rate does not increase the visions of a lottery. People can contract for such interest rate as they please. In either scheme the time or opportunity of a loan was dependent upon the filing of the application. It makes no difference when or with whom it was to be filed, so that the loan was dependent upon the order of filing. Without overruling Lee's Case, and one other following it, the peremptory writ should go, and I so vote. I think the Lee Case was right. In this situation I dissent from the opinion.

## ON REHEARING.

JAMES T. BLAIR, J.—By leave the Lincoln Housing Trust and the Union Home Builders have filed suggestions in support of the motion for rehearing. The arguments made are those advanced in the briefs of relator in the case and are disposed of in the opinion. It is obvious that the collection of a fund by mutual payments for the purpose of encouraging and rendering possible home building by the contributors is a commendable one and that it can be accomplished in a legal way, unless the element of chance is necessary to the procurement of members, which does not seem likely to be true. The briefs which *amici curiae* have filed disclose apprehensions that those concerned in their management and operation may be stigmatized by the opinion in this case as violators of the law. Each of these organizations was operating under a license, issued under an express statute by the Commissioner of Finance. One was ordered licensed by consent decree of this court. While it is true that no statute can repeal or amend the constitutional provision referred to in the opinion, yet the facts mentioned would seem to repel any imputation of evil intent which might be attempted to be founded upon

the decision in this case. Of course, no improper management or the like is suggested in the opinion. What *amici curiae* have done is to be viewed in the light of the fact that it was done under a license issued by the proper authority by virtue of a statute and, in one instance, ordered by consent decree of this court. This gives the question concerning what was done an aspect quite different from that presented when it is sought, as in this case, to secure sanction for things yet to be done. There is no impropriety in saying that this court does not desire to be understood as disposing of either rights or reputations of organizations or individuals not before it. The motion for rehearing is overruled. All concur, except *Graves, J.*, who dissents.