THE STATE v. WILLIAM R. EMERSON, Appellant.—1 S. W. (2d) 109.

Division Two, December 12, 1927.

*Walter N. Fisher* for appellant.

*George B. Webster* also for appellant.

636

*North T. Gentry,* Attorney-General, and *James A. Potter,* Assistant Attorney-General, for respondent.

WALKER, J.—The appellant was charged by information in the Circuit Court of the City of St. Louis with having aided and assisted in the establishment of a lottery as a business or avocation. Upon a trial to a jury he was convicted and sentenced to one year in jail. From this verdict and judgment he appeals.

The appellant was the president of a corporation engaged in the sale of furniture at retail, either for cash or upon time payments. It had an office in the city of St. Louis and employed agents to solicit furniture contracts and to collect the payments thereon as they became due. It also had what it termed "Crew Managers" to direct the activities of its solicitors and collectors. The method employed in conducting the business of the company was to sell contracts for fifty-five dollars each, to be paid on weekly installments of one dollar each. In these sales the company reserved the right to discount one or more contracts every week by charging off the deferred payments and delivering to the contract-holder fifty-five dollars' worth of furniture without further payments. The form of the contract executed in duplicate which was signed and approved by the appellant, omitting credits and formal parts of same not material to this issue, is as follows (State's "Exhibit A."):

"In consideration of fifty-five (55) advance weekly payments in cash of one ($1.00) dollar each, the Maulding Company, Incorporated (hereinafter referred to as the 'Company') agrees to sell and deliver to the Holder of this CONTRACT (the person whose name is signed below or appears on the reverse side hereon), merchandise, to be selected by the Holder, from the stock of merchandise of the Company, priced at fifty-five ($55) dollars at the time the last of said payments is made, and the holder agrees to select, accept and purchase, said merchandise from the Company in full satisfaction of this CONTRACT on the following terms and conditions: . . .

"This CONTRACT may be chosen for discount. The Company has the right, at any time, regardless of the amount that may have been paid on this CONTRACT, to choose this CONTRACT for discount, or any other similar contracts it may have in force, at the rate of one or more contracts per week, and the Company agrees to immediately deliver to the Holder of this CONTRACT, if this CONTRACT should be so chosen, merchandise, priced by the Company at fifty-five ($55)

dollars to be selected by the Holder from the stock of merchandise of the Company.

"It is agreed and understood by the Holder and the Company that Contracts will be chosen and discounted as above for the sole purpose of advertising the business of the Company, and not as Inducements to get the Holder to enter into this Contract or to make the original payment or any subsequent payments on the same. . . .

"THE MAULDING COMPANY,

"By WM. R. EMERSON, Pres.

"E. L. REICHHOLDT, Holder."

Appellant and other agents of the company stated to prospective customers and dissatisfied contract-holders that there was a drawing at the office of the company every Saturday afternoon from which the public was excluded, and in some cases these representations were to the effect that the drawings were by lot, that is, drawing names from a box. In some instances where the customer was one "best known in the neighborhood" it was hinted that the drawing was done at will or pleasure and not by lot. A former employee of the company testified that the discounting was always done at will, upon recommendation of the crew managers, and that the "discounts" went to those whose influence and efforts in the community would best "help the company."

On the trial the appellant admitted the contract in evidence, and the discounting of other contracts, and the delivering of furniture as discounts and that these discounts were charged off to expense, but he denied that the company ever conducted any "drawings," meaning thereby a drawing by lot.

At the trial the State proceeded on the theory that appellant had aided the Maulding Company in establishing a furniture lottery. He defended on the ground that the furniture contracts and the "discounting" of same did not amount to a drawing nor contain the element of chance necessary in a lottery.

The charging portion of the information under which the appellant was convicted is as follows:

"That William R. Emerson on or about the 10th day of March, 1924, unlawfully and feloniously did aid and assist in establishing a lottery as a business and avocation in the city of St. Louis and State of Missouri; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

The information is based on Section 3526, Revised Statutes 1919. The part of the statute here under review declares it to be a felony for any person to aid or assist in making or establishing any lottery, gift enterprise, policy or scheme of drawing in the nature of a lottery as a business or avocation.

I. The crime denounced is statutory. In passing upon a charge based upon that part of this statute which denounces the aiding and assisting of the establishment of a lottery or a scheme in the nature of a lottery we have held it sufficient to employ the language in which the offense is defined. This has been done in the instant case and no tenable objection can be made to the information. [State ex rel. Home Planners v. Hughes, 299 Mo. 529, 253 S. W. 229; State v. Becker, 248 Mo. 555, 154 S. W. 769.]

II. The people in framing the State Constitution (Sec. 10, Art. XIV) declared their disapproval of the establishing of lotteries or schemes of chance in the nature of lotteries, by inhibiting the General Assembly from giving legislative recognition to such schemes. In the discussion and interpretation of this constitutional provision we have held that a lottery includes every scheme or device whereby anything of value is for a consideration allotted by chance. [State ex rel. v. Hughes, supra, l. c. 534.] In State v. Becker, supra, l. c. 560, in line with our former rulings and those of courts of last resort elsewhere, a more comprehensive definition is given to the word and a lottery or a scheme in the nature of a lottery is held to include every punishable plan, scheme or device whereby anything of value is disposed of by lot or chance.

III. The crime having been properly charged, the proof of the existence of the elements necessary to establish it are held to be consideration, chance and a prize. Were these elements shown to have been present in the instant case? Let the facts bear witness: The moving consideration in the making of the contract was the payment by the holder of weekly installments; the chance was that of an early selection of the holder's contract for a discount; and the prize was the furniture to be received. Further than this the inequality between the different contract holders whereby one might secure fifty-five dollars' worth of furniture for a few dollars while another would be required to pay that amount in full for the same quantity of furniture, constituted a prize within the meaning of the Constitution. The lack of knowledge of a holder as to when his contract would be discounted constituted a chance within the contemplation of the law.

IV. Notwithstanding the definitive character of "chance" as stated in the cases cited, it is contended that this element was not

present in the actual or contemplated transactions of this company because there was absent from the determination of the winners the casting of lots, the drawing of cards from a box or wheel or some other similar method usually employed in such transactions. To sustain this contention it must be assumed that the discounting of a contract each week at the pleasure of the company as provided by the contract was not a determination by chance. The correctness of this contention measured by our own rulings and those of courts of last resort elsewhere will not stand the test of judicial scrutiny. There is a plenitude of authority in support of our conclusion in this behalf. In attestation of this fact we refer more particularly to People v. Wassmus, 214 Mich. 42, 182 N. W. 66; State v. Lipkin, 169 N. C. 265, 84 S. E. 340; Natl. Thrift Assn. v. Crews, 241 Pac. 72, 41 A. L. R. 1481. The similarity in verbiage between the contracts in the Wassmus case and that at bar is so marked as to justify the employment of the deadly parallel in proof of the sameness of the two contracts relating to ''discounts'' and the selection of the winners by the management:

*The Wassmus Contract;*

''The company reserves the right to discount the above price of one suit every week to any extent it may see fit, as per advertising plan. The contracts receiving a discount will be selected by the management. The above is not intended as an inducement for the original purchase, but is our method of advertising.''

*The Maulding Contract.*

''The company has the right at any time, regardless of the amount . . . paid . . . to choose this contract for discount, or any other similar contracts it may have in force, at the rate of one or more contracts per week . . . Contracts will be chosen and discounted as above for the sole purpose of advertising the business of the company, and not as an inducement . . . to enter into this contract or to make the original payment or any subsequent payments.''

In the Lipkin case the language of the contract which attempted by words to exempt the business from the charge of chance was as follows:

''In order to advertise our business on a broader principle, we will distribute among our patrons each week several pieces of furniture. Patrons who are selected to receive the furniture will not be required to make any further payments. . . . No method of any kind dependent upon or connected with chance in any form whatsoever enters into this contract.''

The provisions of the contract in the Thrift case as to the manner of conducting the business was as follows:

"For the consideration of the sum of one dollar paid by . . . the ticket holder, the National Thrift Association . . . agrees to pay unto such persons . . . selected by the vote of the holders of this and similar tickets the sums of money herein specified. . . . This ticket may be renewed monthly upon the payment of one dollar. . . . For every unit of 25,000 tickets in force, 1 shall be paid $5,000 in cash. . . . 2500 shall be paid $1 in cash each; and these sums shall be paid each month."

In each of these cases the contracts were held to be lotteries. The distinctive difference between them was that in the Wassmus and Lipkin cases the managements selected the winners, while in the Thrift case they were selected by the holders of the contracts. These differences were not held to render the schemes immune from the charge of being lotteries. In the instant case the appellant, as the executive head of the Maulding Company, entered into the contracts in which the element of chance as a distinctive feature of a lottery is written as large and full as in either of the cases cited.

If more were needed to confirm the conclusion that proof of a conventional drawing was not essential to a conviction for aiding in establishing a lottery it may be found in the following cases from our own reports: State v. Becker, supra; State v. Hilton, 248 Mo. 1. c. 533; State v. Miller, 190 Mo. 1. c. 460; State v. Cronin, 189 Mo. 1. c. 669; State v. Wilkerson, 170 Mo. 1. c. 193; State v. Pomeroy, 130 Mo. 489.

V. It is further contended that there was no proof of a selection by chance, aside from appellant's extra-judicial admissions that "there was a drawing every Saturday." Leaving out of consideration appellant's extra-judicial admissions, there was ample evidence to sustain his conviction. He was the executive head of the Maulding Company and as such was directing, aiding and assisting in the sale and distribution of the dollar-a-week contracts. Aside from whatever he may have said on or off of the witness stand, it was shown that as president he kept his office as such where the company was engaged in business; that he "ran the company;" that he had many conversations in his office with dissatisfied and complaining contract-holders with reference to the discount of their contracts; that he took up at least one of the contracts himself; that this contract was identical with that of. Mrs. Reichholdt, heretofore set forth as "Exhibit A;" and that the company to which he was devoting his time and lending his services was entering into, executing and collecting on

contracts identical, except as to the names of the holders and the dates, with "Exhibit A," as his secretary and others testified. Direct proof of this character rendered whatever admissions he may have made and wherever made admissible. State v. Hilton, 248 Mo. 1. c. 533, lends affirmative sanction to the correctness of this conclusion. In that case a defendant charged with aiding and assisting in the establishing of a "policy" (a lottery scheme) was arrested in a sick room on the second floor of a building in the basement of which paraphernalia for the conducting of a policy scheme was found. In discussing the defendant's admissions, coupled with a train of circumstantial evidence which the court held sufficient to sustain a conviction, it was said: "A well connected chain of circumstances showed the establishment of a policy or scheme of drawing and the instruction defining the probative force of circumstantial evidence was therefore not improper. Defendant's admission, coupled with his possession of the instruments of the crime and his actual participation in an effort to aid and assist at the time of his arrest, afforded ample direct evidence to sustain the verdict."

In view of the foregoing we are authorized in holding that there is no merit in the contention that the proof of the appellant's crime was limited to his uncorroborated admissions or confession. Furthermore, in addition to the foregoing facts and circumstances (which, independent of any statement made by the appellant, are sufficient to establish his guilt), the deductions which may in reason be made from his acts, conduct and statements, not in the nature of admissions, add probative force to such facts and circumstances. We refer more particularly to his statement on the witness stand that he was one of the incorporators of the Maulding Company; that he was its president and in charge of its affairs; that he hired collectors, employed some of the agents and gave the greater portion of his time to the company's business and was familiar with the manner in which it was conducted. He admitted that as president he signed the contract set forth above as "Exhibit A;" and that it was the practice of the company to discount some of the contracts; that it was done in different neighborhoods to secure a greater line of business. Confronted with these facts can it be contended that the appellant was not aiding and assisting in the company's business?

VI. If it be contended that no proof of the *corpus delicti* was made it can only be sustained on the assumption that direct evidence was alone admissible to prove that fact. Such an assumption, however, is unauthorized. It is well settled that the body of a crime may

be established by purely circumstantial evidence. In numerous cases we have held that if there is proof of other relevant facts and circumstances which correspond with the circumstances related in a confession or admission that all of the evidence may be considered in determining whether the *corpus delicti* has been proved. We had occasion in State v. Flowers, 311 Mo. 1. c. 514, 278 S. W. 1040, to discuss this question in which, after reviewing the well considered cases of State v. Skibiski, 245 Mo. 1. c. 463, 150 S. W. 1038, and State v. Vinton, 220 Mo. 1. c. 100, 119 S. W. 370, we reached the conclusion above stated, the sum of all of which, as we said in the beginning, is that the body of a crime may be proved by circumstantial evidence alone. The two elements necessary to prove the *corpus delicti,* (1) the establishing of a lottery by the Maulding Company and (2) that the appellant aided in the same, were shown, both by direct testimony and relevant cricumstances. In connection with this evidence the proof of the appellant's extra-judicial admissions if such proof had been necessary to establish the crime, was proper. However, if the testimony of the extra-judicial admissions be stricken from the record ample and cogent evidence will remain to show that the company made contracts for a consideration which offered the alluring chance of prizes to those to whom the management allowed an early discount. In the adoption and perpetration of this scheme the appellant extended and exercised his aid and assistance. His guilt has been established by satisfactory evidence.

No error which could in any wise have been prejudicial to him was committed, and the judgment should be affirmed. It is so ordered. *Blair, J.,* concurs; *White, P. J.,* concurs in the result, and in all except the reasoning and conclusions as to *corpus delicti.*