PEOPLE v. WASSMUS.

1. LOTTERIES—DISCOUNTING CONTRACT—"CHANCE"—CRIMINAL LAW —STATUTES.

The sale of tailor-made suits on the weekly payment plan, the seller reserving the right to discount one contract each week regardless of the amount paid on the contract, is a lottery within the meaning of 3 Comp. Laws 1915, § 15050; the possibility of the purchaser getting a suit before paying the contract price constituting the element of chance, and the fact that the selection is made by the seller is immaterial.

2. SAME—INFORMATION—EVIDENCE—VARIANCE—DIRECTED VERDICT.

Where, under an information charging the offense of promoting a lottery to have been committed "to wit, on the 2d day of February in A. D. 1920, and on divers other days and dates between the 2d day of February, A. D. 1920, and the 4th day of March, 1920," it did not clearly appear that any of the contracts were made between the dates named, but it did appear that defendant made collections between those dates on contracts previously made; that defendant on examination before the magistrate was fully informed as to what facts the prosecution relied upon, and there is no claim of surprise or prejudice,

it was not error to refuse a directed verdict for defendant on the ground of variance; time not being an ingredient of the offense charged.

3. CRIMINAL LAW—TRIAL—INSTRUCTIONS—HARMLESS ERROR.

In a prosecution for promoting a lottery, an instruction that "of course, you have the right to consider that he is the defendant charged with the offense, and that he is likely to give such testimony as will most likely result in his acquittal," read in connection with all of the instruction on that phase of the case, *held*, not reversible error, although it would have been better omitted; it being simply a frank statement of the obvious human side of the situation, known to every juror as well before the instruction was given as afterwards.

Error to recorder's court of Detroit; Keidan (Harry B.), J. Submitted January 13, 1921. (Docket No. 120.) Decided March 30, 1921.

Louis C. Wassmus was convicted of promoting a lottery, and sentenced to imprisonment for 4 months in the Detroit house of correction. Affirmed.

*Moloney & Lajoie,* for appellant.

*Merlin Wiley,* Attorney General, *Paul W. Voorhies,* Prosecuting Attorney, and *John V. Brennan,* Assistant Prosecuting Attorney, for the people.

BIRD, J. Defendant was informed against and convicted of having promoted a lottery contrary to the provisions of section 15050, 3 Comp. Laws 1915. The proceedings of the trial court are here for review upon writ of error. The record discloses that defendant was the owner of and operating the Bradley Tailoring Company in the city of Detroit. He sold tailor-made suits for $48, payable $1 a week. The person to whom a sale was made was given a number and a card upon which was receipted the weekly payments. Each week a suit was discounted or given to one of the

customers. The particular customer chosen was then entitled to the suit regardless of the amount which he may have paid. The following advertising matter and contract will give an idea as to how the business was conducted:

"ADVERTISING PLAN.

"In order to advertise our business on a broader principle and continually increase our sales, we will discount a $48 suit each week, regardless of the amount paid.

"The company reserves the right to discount the above price of one suit every week to any extent it may see fit, as per advertising plan. The contracts receiving a discount will be selected by the management. The above is not intended as an inducement for the original purchase, but is our method of advertising.

"It is expected that a customer receiving one of our advertising garments will use his influence in securing new accounts, and allow us to use their names as having received one of our garments.

"BRADLEY TAILORING CO.

"Makers of High Grade
Tailored to measure Garments
At $48.00 and up."

"CONTRACT.

"In consideration of 48 payments of One Dollar in advance each week, the Bradley Tailoring Co., agrees to sell to the holder of this contract, a firstclass made-to-measure suit to the value of $48.

"No orders will be accepted on clothing for less than $48, and no money will be returned on discontinued or lapsed contracts. However, we will re-instate your contract on receipt of delinquent payments, or apply the amount paid in to any $48 garment at any time.

"Agents are expressly prohibited from making any agreements contrary to the terms herein specified.

"You do not have to wait 48 weeks before ordering your garment.

"You may order same at any time, and apply all payments credited on this contract."

Counsel requested the court to charge the jury that this method of doing business was not in violation of the following statute:

"Every person who shall set up or promote, within this State, any lottery or gift enterprise for money, or shall dispose of any property, real or personal, goods, chattels or merchandise or valuable thing, by way of lottery or gift enterprise, and every person who shall aid, either by printing or writing, or shall in any way be concerned in the setting up, managing or drawing of any such lottery or gift enterprise, or who shall in any house, shop or building owned or occupied by him or under his control, knowingly permit the setting up, managing or drawing of any such lottery or gift enterprise,  *  *  *  shall for every such offense be punished by a fine not exceeding two thousand dollars, or by imprisonment in the county jail not more than one year." 3 Comp. Laws 1915, § 15050.

The refusal of the court to comply with the request furnishes one of the important questions in the case.

1. It is said that the essentials of a lottery are: *First,* consideration; *second,* prize; *third,* chance. (17 R. C. L. p. 1222.) There need be no question under this scheme about the element of consideration or prize, but it is contended that there is no element of chance in the transaction, that one buys a suit for $48 and gets it, and beside he may get his suit discounted before he makes 48 payments. Herein lies the element of chance. By purchasing a suit for $48 one gets the chance of acquiring it before he pays for it, or before he pays the $48. This chance is the seductive thing about the scheme and it is this which attracts the investor. But it may be said that there is no element of chance because there is no drawing, that the management itself selects the beneficiary; but this fact does not purge the transaction of all element of chance. To the purchaser it is uncertain, as to him it is chance. As was said in a similar case:

"The same contention was made there (*State* v. *Clarke*, 33 N. H. 329) as in this case, that the choice of persons to receive the furniture was not by lot or chance, but by the judgment of the company which proposed to sell; but the court rejected it, and thus showed its fallacy: 'With the purchaser, what prize he might obtain was a mere matter of lot and chance. The scheme involved substantially the same sort of gambling upon chances as in any other kind of lottery. It appealed to the same disposition for engaging in hazards and chances with the hope that luck and good fortune may give a great return for a small outlay, and is, we think, within the general meaning of the word "lottery," and clearly within the mischief against which the statute is aimed.' *Randle* v. *State*, 42 Tex. 580." *State* v. *Lipkin*, 169 N. C. 265 (84 S. E. 340, L. R. A. 1915F, 1018, Ann. Cas. 1917D, 137).

We are unable to distinguish the case under consideration in principle from *People* v. *McPhee*, 139 Mich. 687. In that case a club was formed and weekly payments made for men's clothing. It differed in this, however, that the members of the club determined by some method of chance the particular member who was entitled to the weekly suit. This difference, as is pointed out above, is not controlling if there is some element of chance in it. A case which is still more similar on the facts is the case of *State* v. *Lipkin, supra*. This is an instructive case and reviews the authorities at length. We are of the opinion that the recorder was correct in holding that the transaction came within the inhibition of the statute.

2. It is next asserted that defendant should have had a directed verdict because the offense was not proven as alleged. The time alleged in the information was, "to-wit, on the 2d day of February in A. D. 1920, and on divers other days and dates between the 2d day of February, A. D. 1920, and the 4th day of March, 1920." It did not clearly appear that any of the contracts were made between those dates, but it

did appear that defendant made collections between those dates on contracts which had been previously made. The contracts in evidence bore the dates of October and November, 1919. Defendant testified in his own behalf and described his method of doing business and the taking of contracts during the year preceding the 1st day of January, 1920. There was also some proof that one contract was made on February 19, 1920. Defendant had an examination before the justice and was fully informed as to what the prosecution relied upon. It is not claimed that any surprise or prejudice resulted from the variance, if there were one. Time was not an ingredient of the offense and, therefore, was not very important. No error resulted in refusing to direct a verdict on this ground.

3. Exception is taken because the trial court instructed the jury as follows concerning defendant:

"Of course, you have the right to consider that he is the defendant charged with this offense and that he is likely to give such testimony as will most likely result in his acquittal."

This should be read in connection with all of the instruction on that phase of the case. The trial court said to the jury that a defendant in a criminal case is not obliged to take the stand in his own behalf and the fact that he fails to take the stand cannot be used against him by the court, jurors or counsel. Then proceeding, he said:

"Having taken the stand, you men should weigh his testimony carefully and give it such weight as you think it deserves. Of course, you have the right to consider that he is the defendant charged with this offense and that he is likely to give such testimony as will most likely result in his acquittal, because he has an interest in the outcome of this case; but, notwithstanding that, you should weigh his testimony care-

fully, just as you should weigh the testimony of all witnesses in every case carefully, with an endeavor to arrive at what the true facts are: Because, after all, gentlemen of the jury, you men must find the facts that have been proven by the evidence.   *   *   * It is for you to say which of the witnesses you believe and which you disbelieve, and, having seen the witnesses on the stand, including the defendant at the bar, it is for you to say whether or not the State has proved his guilt beyond all reasonable doubt."

It, perhaps, would have been better if the court had omitted the particular language complained of, but we are unable to persuade ourselves that defendant's interests were in any wise prejudiced by the statement. The statement was true, and every juror knew it, as well before the instruction was given as he did afterwards. It was simply a frank statement of the obvious human side of the situation. If it can be said to be error at all it was not such error as should reverse the case.

We have examined the remaining assignments but find no error in them. It will be unnecessary to consider them further.

The judgment of conviction will be affirmed.

STEERE, C. J., and MOORE, FELLOWS, STONE, CLARKE, and SHARPE, JJ., concurred.

The late Justice BROOKE took no part in this decision.