ACF WRIGLEY STORES, INC., *v.* WAYNE
PROSECUTING ATTORNEY.

**1. LOTTERIES—CONSTRUCTION OF CONSTITUTION—STATUTES.**
The fact that larger penalties are imposed for conducting
lotteries than for other types of gambling makes it unsafe
to construe the Constitution and statutes to include enterprises
not fairly within proscriptive language therein contained
(Const 1908, art 5, § 33; CL 1948, § 750.372).

**2. SAME—TELEVISION PROGRAM—CONSIDERATION.**
Participation by contestant consisting of his listening to and
viewing of a television program, without more, is insufficient to
constitute consideration, an element of lottery or gift. enter-
prise proscribed by Constitution or statute (Const 1908, art
5, § 33; CL 1948, § 750.372).

**3. SAME—TELEVISION GIVEAWAY PROGRAM.**
A "giveaway" program whereby prizes are distributed to home
viewers or listeners of television or radio programs selected
wholly or in part on the basis of chance as an award for
correctly solving a given problem or answering a question does
not constitute a lottery or gift enterprise proscribed by the
Constitution or statute (Const 1908, art 5, § 33; CL 1948,
§ 750.372).

**4. SAME—STATUTES—CONSIDERATION.**
The courts must state the elements of the offense of lottery where
it is not set forth in the statute intended to prevent the mulct-
ing or cheating of the public by the sale of gambling chances,
and, in order to find a promoter of an alleged lottery guilty
of a proscribed act, the participant must have paid something
valuable for the chance to win a prize (Const 1908, art 5,
§ 33; CL 1948, § 750.372).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 23 Am Jur, Forfeitures and Penalties § 37.
[2-5] 34 Am Jur, Lotteries §§ 4, 10.
[6] 14 Am Jur, Costs § 37.

5. SAME—TELEVISION PROGRAM—CONSIDERATION.

Television program wherein the television station drew and televised numbers which the participant observed on a television screen and ascertained whether the numbers drawn matched sets of numbers arranged on a card which he had either procured or prepared himself and registered with the station but for which card he paid nothing and the program only required that the participant listen to the broadcast *held*, not to have constituted a lottery or gift enterprise proscribed by the Constitution or statute (Const 1908, art 5, § 33; CL 1948, § 750.372).

6. COSTS—PUBLIC QUESTION—LOTTERIES.

No costs are allowed in suit for declaratory decree determining that a certain television program was not a lottery and to enjoin prosecution, a public question being involved (Const 1908, art 5, § 33; CL 1948, § 750.372).

Appeal from Wayne; Ferguson (Frank B.), J. Submitted October 14, 1959. (Docket No. 73, Calendar No. 48,208.) Decided April 11, 1960.

Bill by ACF Wrigley Stores, Inc., a Delaware corporation, against Samuel H. Olsen, Wayne Prosecuting Attorney, for declaratory decree determining that a certain television program was not a lottery and to enjoin prosecution. Decree for plaintiff. Defendant appeals. Affirmed.

*Irwin I. Cohn* (*Avern Cohn* and *John Sklar,* of counsel), for plaintiff.

*Arthur J. Koscinski,* Chief Assistant Prosecuting Attorney, and *William P. Long,* Assistant Prosecuting Attorney, for defendant.

KELLY, J. This is an appeal from a Wayne county circuit court finding that a television program known as "Play Marko" was not a lottery.

The successive Michigan Constitutions (Const 1835, art 12, § 6; Const 1850, art 4, § 27; Const 1908,

art 5, § 33) have, in language materially unchanged from the original phraseology, prohibited legislative authorization of lotteries by providing that: "The legislature shall not authorize any lottery nor permit the sale of lottery tickets."

The constitutional mandate was implemented by RS 1838, pt 4, title 1, ch 10, re-enacted by RS 1846, ch 160, a statute which, with minor amendments in 1867 (PA 1867, No 86) and in the penal code (PA 1931, No 328), remains the law today.   CL 1948, § 750.372 [Stat Ann 1954 Rev § 28.604] provides:

"Any person who shall set up or promote within this State any lottery or gift enterprise for money, or shall dispose of any property, real or personal, goods, chattels or merchandise or valuable thing, by the way of lottery or gift enterprise, and any person who shall aid, either by printing or writing, or shall in any way be concerned in the setting up, managing or drawing of any such lottery or gift enterprise, or who shall in any house, shop or building owned or occupied by him or under his control, knowingly permit the setting up, managing or drawing of any such lottery or gift enterprise, or the sale of any lottery ticket or share of a ticket, or any other writing, certificate, bill, goods, chattels or merchandise, token or other device purporting or intended to entitle the holder or bearer or other person to any prize or gift, or to any share of or interest in any prize or gift to be drawn in any such lottery or gift enterprise, or who shall knowingly suffer money or other property to be raffled for in such house, shop or building, or to be there won by throwing or using dice, or by any other game or course of chance, shall for every such offense be guilty of a misdemeanor, punishable by imprisonment in the State prison not more than 2 years or by a fine of not more than $1,000."

The television program under question consists of drawing and televising numbers by the television

station. The participant in his home, or elsewhere, observes a television screen and ascertains whether the numbers drawn match the vertical, horizontal, or diagonal set of numbers on his card. The participant may use a card distributed by plaintiff or he may prepare his own card, which participant forwards to the television station where it is registered and then returned to participant with notice of the broadcasting day on which the card may be used. If participant matches numbers, he notifies the broadcasting station and is awarded a prize.

There has been no substantial legislative change since *People* v. *Reilly* (1883), 50 Mich 384. In this decision in which Justice Cooley participated, the Court traced the legislative history, background and intent of the statute, and called attention to the fact that lotteries were allowed to raise money for public improvement, such as for the benefit of Detroit after the destruction of the city by fire in 1805; for the benefit of the university in 1817, and the 1829 lotteries to secure free bridges and improved highway communication between Detroit and Monroe; that the 1835 Constitution "clearly referred to the class of enterprises which had formerly been lawful if authorized by law"; that the statute of 1828 "covered all such cases adequately, and remained unchanged until the Revised Statutes of 1838, which introduced the sections now in force, and which has only been once amended, in 1867."

In this *People* v. *Reilly* decision, *supra,* our Court said (pp 387, 388):

"In 1867 (PA 1867, No 86, p 122) an amendment was made inserting after the word 'lottery,' when it occurred, the words 'or gift enterprises,' but in no other way varying the substance of the statute, which still remains as then amended. This change was no doubt introduced from a doubt whether the gift enterprises which were then becoming numer-

ous, belonged strictly to the class of lotteries, because in some respects conducted in different ways, although reaching similar results.

"No one can compare the legislation of the State without seeing that the legislature has found it desirable to deal with lotteries differently as well as more severely than with other gambling transactions. The reason is not difficult to find. Lotteries generally involve large sums of money, or large prizes of some kind, and circulate their tickets in large numbers and in all parts of the country. All classes and persons of all ages are tempted to invest in the chances of sudden riches, and it is a matter of history that the passion for such investment has led to serious and wide-spread mischief. No other form of gambling operates as extensively in its dealings or demoralizes so many people. It is this extensive reach and not merely its speculative purposes which makes lottery-gambling so dangerous. The profits are so great that small penalties might not be efficacious enough to suppress the business, and the changes of our own legislation indicate this by the successive addition of imprisonment in the county jail, and even in the State prison, to the large fine first imposed in 1828.

"It is not safe to extend these serious consequences by construction to cases which are not fairly within the language of the Constitution and statutes, especially as the legislature has made provision for much lighter punishment in those cases of gambling which are more confined in their action, and therefore less likely to do mischief on a large scale. We think that it would be straining the law to include such acts as those of the respondent within the category of lotteries, and therefore we must treat the case as one which has not been placed by the legislature under the classification of offenses which should be left to be dealt with by the municipal by-laws and ordinances, as well as by State laws."

A television program similar in every way to the television program now being considered was decided

not to be a lottery by the District of Columbia circuit of the United States court of appeals. In that decision (*Caples Company* v. *United States,* 100 App DC 126 [243 F2d 232] ), the court stated:

"Petitioner contends that the commission's ruling is contrary to the supreme court's decision in *Federal Communications Commission* v. *American Broadcasting Co., Inc.* (1954), 347 US 284 (74 S Ct 593, 98 L ed 699), construing earlier antilottery regulations. The court held that, since the regulations were bottomed squarely on a criminal statute, 18 USC, § 1304 (based upon section 316 of the communications act of 1934, 47 USC, § 316), the regulations must be as strictly construed as the statute. The statute, and therefore the regulations, said the court, proscribe '(1) the distribution of *prizes*; (2) according to *chance*; (3) for a *consideration.*' 347 US at page 290, 74 S Ct at page 598, emphasis supplied. In that case, as in this, only the existence of *consideration* was in question. The court found that, in the program there involved, 'not a single home contestant is required to purchase anything or pay an admission price or *leave his home to visit the promoter's place of business*; the only effort required for participation is listening.' *Id.* 347 US at page 294, 74 S Ct at page 600; emphasis supplied. It held this effort alone insufficient consideration for the purposes of a penal statute.

"The commission says *American Broadcasting Co.* is not controlling here because 'Play Marko' requires something more than 'listening,' in that the cards necessary for participation can only be obtained from the sponsor's stores or outlets. The requirement of a visit by the participant, or someone on his behalf, is said to be a thing of value since it is of benefit to the sponsor.

"We agree that the requirement of obtaining the cards from the sponsor's stores or outlets is something more than 'listening' and, perhaps, makes the program here more objectionable. But the commis-

sion tells us that its ruling 'is not an expression of the commission's judgment as to the quality or desirability of the program but an interpretation of a Federal statute specifically prohibiting the broadcast of lotteries.' When the test laid down by the supreme court is applied, we conclude that 'it would [still] be stretching the statute to the breaking point to give it an interpretation that would make such programs a crime.' *Ibid.* The undesirability of this type of programming is not enough to brand those responsible for it as criminals. Protection of the public interest will have to be sought by means not pegged so tightly to the criminal statute or in additional legislative authority."

In *Federal Communications Commission* v. *American Broadcasting Co., Inc.,* 347 US 284 (74 S Ct 593, 98 L ed 699), the court dealt with the prohibition by the Federal communications commission of the broadcasting of programs because of a Federal statute forbidding the broadcasting of "any lottery, gift enterprise, or similar scheme, offering prizes dependent in whole or in part upon lot or chance." The United States supreme court in an unanimous opinion, written by Chief Justice Warren, held that no lottery existed, and said (p 293):

"We find no decisions precisely in point on the facts of the cases before us. The courts have defined consideration in various ways, but so far as we are aware none has ever held that a contestant's listening at home to a radio or television program satisfies the consideration requirement. Some courts —with vigorous protest from others—have held that the requirement is satisfied by a 'raffle' scheme giving free chances to persons who go to a store to register in order to participate in the drawing of a prize, and similarly by a 'bank night' scheme giving free chances to persons who gather in front of a motion picture theatre in order to participate in a drawing held for the primary benefit of the paid

patrons of the theatre. But such cases differ substantially from the cases before us. To be eligible for a prize on the 'give-away' programs involved here, not a single home contestant is required to purchase anything or pay an admission price or leave his home to visit the promoter's place of business; the only effort required for participation is listening."

Reporting the same case in 98 L ed 699, a headnote reads:

"A 'giveaway' program broadcasted by a radio or television broadcasting company, that is, the distribution of prizes to home listeners, selected wholly or in part on the basis of chance, as an award for correctly solving a given problem or answering a question, does not constitute a 'lottery, gift enterprise, or similar scheme,' the broadcasting of which is prohibited by 18 USC, § 1304."

The Alabama supreme court in *Clark* v. *State,* 262 Ala 462 (80 So2d 312), considered the question whether a lottery existed where the operator of a store awarded prizes to contestants whose names were drawn on weekly television programs. The court held:

"Scheme whereby prizes were given by operator of store to contestants whose names were drawn on weekly television program without contestants being required to make any purchase or pay any money, was not a 'lottery', though purpose of scheme was to increase store's business through television advertising." (Syllabus.)

The prosecuting attorney relies upon the *Colonial Theatre Cases* (*Sproat-Temple Theatre Corp.* v. *Colonial Theatrical Enterprise, Inc.,* 276 Mich 127, and *United-Detroit Theaters Corp.* v. *Colonial Theatrical Enterprise, Inc.,* 280 Mich 425). Both of these cases dealt with the theater's plans whereby

prizes were awarded to occupants of the theater, or those in the lobby, or in the immediate vicinity of the theater, who held tickets or cards bearing the numbers drawn from a container.

Each of these cases required the participants' presence, either in the theater or in the immediate vicinity, and presented an entirely different combination of facts than are presented in this appeal.

The trial court's opinion stated:

"Michigan statutes do not define lotteries. The elements of a lottery are not set forth in the statute and, therefore, this has been left to the courts.

"Our lottery statute has been on the books for many years and was passed to prevent the mulcting or cheating of the public by the sale of gambling chances.

"In 41 Georgetown L J, 556, 558, it is said that authority is only as good as the reason for it, and the evil sought to be eradicated by the lottery statutes was the impoverishment of the participant, and the enrichment of the promoter of the scheme, but this evil results only when the participant pays something valuable for the chance to win a prize.

"It is the opinion of the court that these radio and television programs do not encourage gambling because the person is passive as far as the giveaway plan is concerned; also, it seems to follow that the radio and television programs are not included within the prohibition of the statutes.

"The courts have been quite realistic in viewing giveaway programs only as a nuisance in our time and not as the evil of the century.

"The court therefore holds that television program 'Play Marko' is not a lottery within the meaning of the statute."

We agree with the trial court, and hold that if television programs such as considered in this appeal are to be prohibited it must be by legislative action and not by decision of the court.

' Affirmed. No costs, a public question being involved.

DETHMERS, C. J., and CARR, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.

SOURIS, J., took no part in the decision of this case.